SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
60 Cutter Mill Road, Suite 409
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

LAW OFFICE OF JAMES CHUNG
James Chung
43-22 216th Street
Bayside, NY 11361
Telephone: (718) 461-8808
Facsimile: (929) 381-1019
*jchung_77@msn.com*

United States District Court
Southern District of New York

Case No.:

| | |
|---|---|
| LORI MARIE TURK, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| RUBBERMAID INCORPORATED, | |
| Defendant. | |

Plaintiff LORI MARIE TURK ("Plaintiff" herein), individually and on behalf of all similarly situated, bring this Class Action Complaint against RUBBERMAID INCORPORATED, ("RUBBERMAID" or "Defendant" herein), and on the basis of personal knowledge, information and belief, and investigation of counsels, allege as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action on behalf of consumers seeking remedy for Defendant's deceptive business practice in marketing, advertising and promotion of a line of ice

coolers labeled "4 Day" through "7 Day" (the "Products" herein).   The Products are sold in numerous colors and sizes.   Defendant has engaged in, and continues to engage in, deceptive and misleading business practices in marketing and sale of the Products that has caused injury to Plaintiff and the putative class.

2.      Defendant sold to Plaintiff and class members, and continues to sell to consumers the Products.   Defendant creates misleading and unsubstantiated claims to represent their Products.

3.      Defendant has led Plaintiff and reasonable consumers to believe that the Products will retain ice for a certain period of time.   In so doing, Defendant falsely represented that the Product will retain ice for the aforementioned period of time during normal use.

4.      Plaintiff and the members of the class reviewed Defendant's misleading labeling, reasonably relied on the label on the Product, and were deceived into purchasing the Product.

5.      Defendant's actions violate various New York consumer protection laws and similar deceptive and unfair trade practice laws in other states and the District of Columbia. Defendant violated statutes enacted in each of the fifty states and the District of Columbia which are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").   The aggregate claims of all members of the proposed class and subclasses are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members, Plaintiff, as well as members of the proposed class, are citizens of a state different from Defendant.

7.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omission, and acts giving rise to the claim occurred in this District where Defendant distributed, marketed, advertised, and sold the various ice cooler products at issue throughout New York.

8.      Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue because Plaintiff and a substantial portion of putative class members are residents of this District and a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

9.      This Court has personal jurisdiction over Defendant because it is authorized to do business and does business in New York, has marketed, advertised and made sales in New York, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## **PARTIES**

10.      Plaintiff is a citizen of the State of New York and resides in Orange County. Plaintiff was exposed to Defendant's claim by reading the labeling on the ice cooler prior to purchase.

11.      Plaintiff purchased the Rubbermaid Marine Cooler 102-quarts at Walmart Inc. in Newburgh, NY.

12.      Plaintiff purchased the product for personal use in reliance of the labeling.   As a result of the representation made by Defendant, Plaintiff expected the product to perform as described.   The product did not perform as represented on the labeling.   Therefore, Plaintiff suffered injury-in-fact.

3

13.     Had Plaintiff known the truth about the misrepresentations and omissions, he would not have purchased the Product.   Instead, he may have purchased a competing product that is less expensive.   Plaintiff cannot rely on the truthfulness of the Product in the future unless Defendant makes corrective changes.   Plaintiff may consider future purchase if Defendant engages in corrective labeling and advertising.

14.     Defendant Rubbermaid Incorporated, is a corporation organized under the laws of Ohio with corporate address of 8935 Northpointe Executive Drive, Huntersville, NC, 28078, Mecklenburg County and the address for service of process is c/o Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, OH 43215.   Defendant manufactured, packaged, distributed, advertised, promoted and sold the products to thousands of consumers nationwide.

15.     Defendant manufactures, markets and sells ice coolers under "Rubbermaid" brand name throughout the United States.   The advertisement for the Product that was relied upon by Plaintiff was prepared and approved by Defendant and was disseminated by Defendant and its agents through misrepresented product labelling alleged herein.

16.     The labelling and advertising were designed to encourage consumers to purchase the Products and misled the reasonable consumer into purchasing the same.   Defendant distributes the Products and created and/or authorized the unlawful, fraudulent, misleading, deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

### A.  Rubbermaid's Representation

17.     Defendant manufactures various models of ice coolers and sells the Products throughout the United States through a network of brick and mortar and online stores.   These stores include, but are not limited to Walmart, Lowes, Home Depot, Amazon and Ebay.   The

4

price range of the Products are between $ 30 to $ 130, excluding tax.

18.     Defendant claims that their line of ice coolers "keeps ice" or "retains ice" for 4 to 7 days.   Defendant further makes the claim in French and Spanish: "Conserva El Hielo Durante # Dias," "Conserve La Glace Pendant # Jours."[1]

19.     Some models contain disclaimer such as "Keeps ice up to 5 Days @ 90 degrees," and "Performance under test conditions."    However, other models do not contain the disclaimer. A sampling of Defendant's Products and labelling are illustrated below:

Illustration 1:



20.     The label on the 75-quart ice cooler above claims to keep ice for "5 Days."    It further claims that the Product has a capacity for 130 cans and 15 lbs. of ice.   The message wrongfully conveys that the Product filled with 130 cans and 15 lbs. of ice will "keep ice" for 5

---

[1] " # " represents the number of days Defendant claims to "keep ice." For example "5 days."

days.

Illustration 2:



21.     The Product illustrated above appears to be similar to the item on illustration 1.

Oddly, illustration 2 contains "6-day" claim instead of "5-day" claim although no major difference

can be identified between the two coolers.

Illustration 3:[2] Marine Series 102qt.



---

[2] The "Product Overview" was copied and pasted from Walmart website.

- NO COLOR CHOICE
- Extra thick insulation keeps ice for 5 days at 90° F
- Heavy duty side swing handles with comfort grip
- Stain and odor resistant
- Easy to clean liner
- Sturdy lid with molded in fish scale
- Fits 2 liter bottles upright and contains a threaded drain plug
- Latchable hinged lid for secure close
- Rubbermaid Iceolater⊠ bottle capable
- Assorted colors
- Holds 170 lbs of fish and 30 lbs of ice or 122 cans plus ice

22.     The labeling on the 102 quart cooler states that the cooler will keep ice for up to 5 days at 90 degrees Fahrenheit.   It further claims to have the capacity to fill 170 lbs. of fish and 30 lbs. of ice.   In the alternative, it can fill 122 cans plus 30 lbs. of ice.   Defendant is mistakenly implying that the cooler will "keep ice" for five days while holding 170 lbs. of fish (or 252 cans) and 30 lbs. of ice.

**B.  Defendant's Representations Are False, Deceptive and Misleading**

23.     The term "keeps ice" or "retains ice" can have a diverse meaning to different groups of people.   The term is even more perplexing in Spanish and French.   The Spanish word "conserva" means "to preserve" in English translation.   The French word "conserve" also translates to the same meaning in English.

24.     The *scientific* definition to "keep ice," or "retain ice" has a specific meaning which is based on the theory of states of matter.   There are five phases of matter consisting of solid, liquid, gas, plasma and Bose-Einstein condensate (BEC).[3]   Only liquid and solid is relevant to interpret Defendant's representation to "keep ice."

25.     The simple definition of solid is "material that has a definite shape, mass and volume." Id.   Solids maintain the shape unless an outside interaction is present.   An "ice" is a solid phase of matter and it will generally maintain the same shape, mass and volume.

---

[3] Bagley, Mary, *Matter: Definition & the Five States of Matter*, LiveScience, August 2019.

Alternatively, "ice" is "solid state of water," or "water that maintains a temperature of 32 degrees Fahrenheit."

26.     The definition of liquid is "a state of matter with particles that are free to flow and without definite shape."[4]   Water is an example of a liquid.   It is academic that the phase change occurs between solid and liquid at a temperature of 32 degrees Fahrenheit.   The ice melts into water at a temperature higher than 32 degrees Fahrenheit.

27.     To "keep" is defined in the dictionary as "to cause to continue in a specified condition, position, course or characteristics" for a specified amount of time.   Under this definition, any ice in the cooler should remain in solid state of matter.

28.     Contrary to Defendant's claim, the phase change occurs as soon as the ice is removed from the condition with temperature higher than 32 degrees Fahrenheit.   The ice will start melting and turn into water as soon as the ice is placed in the cooler unless the cooler has a temperature lower than the freezing point.

29.     Simply put, ice cannot "keep" the solid state for more than a few moments, let alone the claimed amount of days.   Therefore, Defendant's claim "keeps ice" for a specified amount of days fails under the scientific interpretation.

30.     The consumers' definition of "keeps ice" appears to be the time period from when the original ice is place in the Product and when the ice becomes fully non-functional losing most of the ability to keep items chilled.   See Product reviews below.

**very disappointed**

★☆☆☆☆                                                                July 31, 2018

Purchased one based on reviews, first time using bringing on vacation maybe a 3 hour car ride, 2 bags of ice and when reaching destination ALL water in cooler. Didnt even keep one fourth of the ice for half a day let alone 5 days. Will be bringing back to see what can be done.

---

[4]  Helmenstine, Anne Marie Phd, *Liquid Definition in Chemistry*, ThoughtCo, July 2019.

Heavy, hard to roll, and doesn't keep items cool for very long. Ice melts within a few hours. We
...

★☆☆☆☆                                        November 11, 2020

Heavy, hard to roll, and doesn't keep items cool for very long. Ice melts within a few hours. We liked the design and size but it's way too hard to pull when it's full.

★☆☆☆☆  **Doesn't seal and stay cold**
Reviewed in the United States on September 25, 2017
Color: Red  |  Size: 20-quart  |  Verified Purchase
This cooler is totally useless. We bought it for a road trip and the top doesn't seal well. Everything in there was warm within three or four hours.

★☆☆☆☆  Disappointed · 4 years ago
Cooler
The dimensions advertised are not the actual storage dimensions. The actual storage dimensions are significantly smaller. My items would not fit.

Ice melts quickly. I would not buy this brand again....

★★☆☆☆                                        November 11, 2020

Ice melts quickly. I would not buy this brand again.

31.     The reviews for the Products are less than stellar.   According to the reviews, the ice cooler "keeps ice" for less than a few hours under normal use.   In other words, the Product fails to keep food and beverage chilled for the claimed amount of days.

32.     If the Product kept ice for the claimed time period, the food items will stay chilled for the number of days promised.   As illustrated, numerous consumers complain of Defendant's misrepresentation.   None of the reviews on that particular website support Defendant's ice retention claim.

33.     Defendant has a perplexing interpretation of the phrase "keeps ice."   Defendant's definition of "keeps ice" appears to be the amount of days it takes for most or all of the ice to be melted into water.   Aside from the wrong interpretation, Defendant performs the test in an ideal condition that in no way simulate normal consumer use of the Products.

34.     Even, *arguendo*, Defendant's convoluted and self-serving interpretation of "keeps

ice" is utilized, the Product fails to retain ice for the represented period of time.

35.    As a matter of fact, numerous Youtube posters performed "Ice Challenge" to assess credibility of the claims made by Defendant and some of their competitors.

36.    In the "5 Day Ice Challenge," the coolers were pre-chilled, filled to the brim with ice and opened a couple of times a day.    The outdoor temperature averaged less than 90 degrees Fahrenheit.    After five days, most of the eleven coolers being tested had very little ice left. Defendant's cooler did not survive the 5-day challenge.    All the ice in Defendant's cooler had turned into water by end of day three.[5]

37.    Yet in another performance test, one bag of ice which appears to be about 7-10 lbs., was placed in Defendant's cooler for twenty-four hours.    All the ice turned into water after less than one day.[6]

38.    The outdoor gear articles provide the same degree of credibility to Defendant's claim.    A writer commented that "Durachill did not live up to its titular 5 day claim.    It was able to maintain safe food storage temperatures for 2 full day and ran out of ice after 4 days."[7]    Another Product reviewer concluded that "Rubbermaid Extreme model is not good for a long weekend trip."[8]

39.    In sum, Defendant's claim to "keep ice" fails on all fronts.    The represented amount of days to keep ice is unsubstantiated; scientifically, through consumer expectation and their own testing process.

40.    As noted herein, Defendant utilizes disclaimer on **some** of the Products.    The disclaimer notes that the Product keeps ice *up to* claimed amount of days at 90 degrees Fahrenheit.

---

[5] https://www.youtube.com/watch?v=zu-V0ZqfYHg&list=RDCMUC-c7LGqwyHQlXv7PqV6oKyg&index=14
[6] https://www.youtube.com/watch?v=kgtA9k-PFio
[7] Mutter, Max, *Rubbermaid DuraChill Wheeled 5-Day Review*, February 2018.
[8] https://topratedcooler.com/rubbermaid-extreme-5-day-wheeled-cooler-75-quart-review/

Further disclaimer states that the claim is based on "Performance under test conditions."

41.     Initially, the disclaimers on the labeling are not visible to a naked eye.   The font size and color are designed to go unnoticed.   Under the reflecting lighting in the store, the disclaimer appears blurry due to the background, color and size of the font.

42.     Even if the disclaimers are visible, the characterization of "up to" is deceptive. The characterization is akin to an automobile manufacturer representing that their car can travel *up to* 50 miles per gallon of gasoline.   The automobile manufacturers are not permitted to make such a representation on their advertisement for good reasons.

43.     Similarly, many conditions exist where Defendant's Product can keep ice up to number of claimed days.   In fact, the ice cooler can keep ice for an infinite time period in certain conditions.   Therefore, the "up to" claim is a misnomer which has no place in advertisement such as the ice coolers.   The sole basis for the claim should be the maximum days represented.   For instance, if "5 Day" is represented, the cooler should "keep ice" for five days, not four, not three days.

44.     In regards to "Performance under test conditions," this too, is deceptive and misleading.   The product's performance was tested under optimal conditions.   The optimal conditions include but are not limited to; 1. Controlled setting such as humidity 2. Filling the ice to full capacity 3. Use of dry ice or block ice instead of the ice sold in stores 4. Pre-chilling the cooler and contents 5. One temperature setting instead of fluctuating heat.   The optimal conditions are not the type of performance testing expected by the consumers.

45.     Therefore, the disclaimers are self-serving statements intended to avoid transparency.   The true intent is to cover up their deception by attempting to appear transparent. The disclaimer evinces the fact that Defendant cannot substantiate their claim to "keep ice."

46.     In contrast, the highly regarded premium brand Yeti cooler which sells for about $ 350 does not make such claims.

47.     Yeti allows the quality of the product to convey the message for itself without exaggerating the number of days. See illustration below.



PERMAFROST™ INSULATION

Pressure-injected commercial-grade polyurethane foam in the walls and lid makes sure your ice stays ice.

**C.  Plaintiff and the Class Has Been Deceived and Suffered Harm**

47.     Defendant clearly and conspicuously has conveyed the message to consumers that the Product retains the ice for the claimed amount of days.

48.     Plaintiff purchased the Product believing that the Defendant's claims regarding the quality and technology of the Products are truthful and accurate.   Defendant's misleading statement is labeled directly on the Product.    Defendant's deceptive product description and claim sends a false message to a reasonable consumer that the Product will "keep ice" for the promised period of time.

49.     The labelling further claims and *implies* that the Product will "keep ice" for a claimed period with 250 lbs. of fish and 30 lbs. of ice or 130 cans with 15 lbs. of ice.

50.     The consumers exposed to Defendant's claim, not only expect the ice cooler to retain ice for some period of time, they expect the food and beverage items to be chilled for the same period.     However, Defendant's claims are untrue.

51.     Defendant has known about their false claim for many years.   Numerous complaints have been lodged against Defendant directly and through other forums.

52.     Based on Defendant's claim, a reasonable consumer would expect the ice to be functional for claimed number of days and not turn into water.

53.     The ice will never be functional for claimed period of time in Defendant's ice cooler under normal use.   If the food and beverage items were left in the cooler with ice for 4-7 days, the items will be submerged in water.

54.     Therefore, Defendant's claims are false, materially misleading, and reasonably likely to deceive the public at large.

55.     As a result of Defendant's deceptive claims, Plaintiff and the putative class have purchased the Products that do not perform as advertised.   They were deprived of the benefit of the bargain and suffered monetary loss.

56.     Plaintiff and the putative class have been and will continue to be deceived by Defendant's false claims.

57.     Based on the claims purported in the labelling, Defendant is able to price the Product at a premium over other products sold by their competitors.

58.     Defendant has reaped huge profits from false, misleading and deceptive marketing and sale of the Products.

59.     Plaintiff brings this action to prevent the dissemination of false, misleading and deceptive advertising and obtain redress for those who have purchased the Products.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3) ("the Class").

61.     The proposed class consists of: All persons who purchased one or more Defendant's "4 Day" to "7 Day" cooler in the United States and its territories or possessions sold by Defendant.

62.     Plaintiff also brings this suit on behalf of sub-classes consisting of purchasers of the Products in New York during the proposed class period.

63.     The members of the class are so numerous that joinder is impracticable.

64.     Plaintiff's claims are typical of the claims of the entire class.

65.     Plaintiff will fairly and adequately represent and protect the interests of the other class members for purposes of Federal Rule of Civil Procedure 23(a)(4).

66.     Plaintiff has no interests antagonistic to those of other class members.

67.     Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in class action litigation.

68.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual members of the class, including, but not limited to:

   a.   Whether Defendant's advertising and labelling is false, deceptive, fraudulent and misleading;

   b.   Whether the Products can retain ice for the claimed period of time under normal use or the Product can "keep ice" for the claimed period of time under the scientific definition or the Products can retain ice for a claimed period of time under Defendant's definition of "ice retention.";

   c.   Whether the misrepresentation made by Defendant constitute material facts that reasonable purchasers would have considered in deciding whether to purchase them;

14

d.   Whether Defendant had breached warranties made to consumers regarding the Products;

e.   Whether Defendant's marketing, promotion, advertising, labelling and sale of the Products is and was a deceptive act or practice in the conduct of business at consumers, in violation of the New York General Business Law §§ 349 & 350 for the New York Subclass;

f.   Whether Defendant's marketing, promotion, advertising, labelling and sale of the Products is and was a deceptive act or practice in the conduct of business directed at consumers, in violation of consumer protection laws in all other jurisdictions;

g.   Whether Plaintiffs and members of the Class sustained injuries or damages as a result of Defendant's false advertising of the Product;

h.   Whether Defendant's conduct constitutes unjust enrichment, and whether equity calls for disgorgement of unjustly obtained funds, restitution to, or other remedies for the benefit of the Class;

i.   Whether Plaintiffs and members of the Class are entitled to equitable relief and prospective injunctive relief enjoining Defendant from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged in this Complaint; and

j.   Whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or the multiplier to the actual or potential harm to the Class.

69.   Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to

other available methods for the fair and efficient adjudication of this controversy.

70.     Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged.

71.     Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

72.     Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 349 & 350

## (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)-New York Subclass

73.     Plaintiff incorporates by reference all preceding paragraphs.

74.     Plaintiff brings this claim on behalf of himself and the other members of the Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law §§ 349 & 350.

75.     Defendant's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL §§ 349 & 350 which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce including advertising.

76.      NY GBL § 349 provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.   NY GBL § 350 prohibit false advertising.   Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]."

New York GBL section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

77.    The practices of Defendant described throughout this Complaint were specifically directed to consumers.

78.    Defendant's conduct is malicious, willful, wanton and outrageous such as to shock the conscience of the public and warrant imposition of punitive damages.

79.    Defendant's actions impact the public at large because Plaintiff and members of the Class were injured in exactly the same way as thousands of others purchasing the Products as a result of Defendant's deceptive conduct.

80.    By committing the acts alleged in this Complaint, Defendant has misled Plaintiff and the Class into purchasing the Products, in part or in whole, due to an erroneous belief that the Products have qualities that it does not have.   This is a deceptive business practice that violates NY GBL §§ 349 & 350.

81.    The practices employed by Defendant, namely Defendant's advertisement, promotion, and marketing materials that claim the Products will keep ice for "4 Day" to "7 Day" are unfair, deceptive, and misleading and are in violation of NY GBL §§ 349 & 350.

82.    Defendant's claims misled Plaintiff and are likely in the future to mislead reasonable consumers.   Had Plaintiff and members of the Class known of the true facts about the Products' failure to work as promised, they would not have purchased the Products and/or paid substantially less for competing product.

83.    Defendant's violations proximately caused Plaintiff and other members of the Classes to suffer actual damages in the form of, inter alia, monies spent to purchase the Products,

and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT II
## BREACH OF EXPRESS WARRANTY (§ NY U.C.C. 2-313)

84.      Plaintiff incorporates by reference all preceding paragraphs.

85.      Defendant is, and at all times relevant was, a merchant and sold goods to Plaintiff.

86.      Defendant made an affirmation of fact and promise about the quality of the goods and made the following warranty statement:[9]

**RUBBERMAID 1 YEAR LIMITED WARRANTY**
Rubbermaid warrants to the original owner that this product is free from defects in material and workmanship for a period of one year from the date of the original purchase. If this product is defective when used as intended under normal household conditions within the specified period, Rubbermaid will replace the product, send a replacement part or issue a refund (at our option) when the consumer provides a proof of purchase (either a bill of sale, receipted invoice, or other proof that the product is within the warranty period), along with a full description of the defect, to

87.      Defendant expressly extended the warranty to the original retailer purchaser and warranted the product to be as follows:

        a. in good quality;

        b. generally fit for its intended purpose;

        c. merchantable; and

        d. free from defect.

88.      Plaintiff relied upon Defendant's specialized knowledge, expertise, experience, skills, and judgment to properly perform its duties in a manner that would not present an

---

[9]  https://www.coleman.com/warranty-
information#:~:text=The%20warranty%20included%20with%20your,product%20to%20Coleman%20without%20a
uthorization. – Warranty information available on the attached link.

unreasonable risk of harm or place an undue burden upon Plaintiff.

89.     By selling the Products that did not perform as promised, to consumers like Plaintiff and the Class, after it gained knowledge of the defects, Defendant breached its expressed warranty to provide goods that were conforming to the representaions.

90.     The product, as sold, did not conform to the express warranties.

91.     At the time Defendant warranted and sold the goods, it knew that the goods did not conform to the warranties and were inherently defective, and Defendant wrongfully and fraudulently misrepresented and concealed materials facts regarding its goods.

92.     Defendant was provided with notice, and has been on notice, of the non-conformance and of its breach of express written warranties through consumer warranty claims and customer complaints.   In the alternative, Defendant will be provided with notice.

93.     Yet, Defendant failed to cure the non-performance as Defendant promised.

94.     As a direct and proximate result of Defendant's breach of its express warranties, Plaintiffs suffered damages in an amount to be determined at trial.

## COUNT III

## BREACH OF IMPLIED WARRANTY

95.     Plaintiff incorporates by reference all preceding paragraphs.

96.     Defendant is, and at all times relevant was, a merchant and sold goods to Plaintiff.

97.     Defendant impliedly warrantied that the subject Product, which Defendant designed, manufactured, and sold, were merchantable, fit for the ordinary purposes for which they were intended to be used, and were not otherwise injurious to consumers.

98.     Plaintiff and members of the class have privity with Defendant.   Defendant conferred express warranty to Plaintiff by extending the warranty to "original retail purchasers."

Defendant further created privity by labeling all Products with certain representations directed at Plaintiff and the Class and offered the goods for sale.   Plaintiff and the Class accepted the offer by purchasing the Product.

99.      Plaintiff and the members of the class have suffered damages caused by Defendant's breach of implied warranty of merchantability and are entitled to recover compensatory damages, including but not limited to the cost of replacement and diminution in value.

## COUNT IV

## Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

100.      Plaintiff incorporates by reference all preceding paragraphs.

101.      At all times relevant hereto Defendant was under a duty imposed by law requiring that a manufacturer's and merchant's product be reasonably fit for the ordinary purposes for which the product is used, and that the product be acceptable in trade for the product description.

102.      This implied warranty of merchantability is part of the basis for the bargain between Defendant on the one hand, and Plaintiff and class members on the other.

103.      Notwithstanding the aforementioned duty, at the time of delivery, Defendant breached the implied warranty of merchantability in that the Products were nonconforming, and would not pass without objection.

104.      Defendant knew or should have known that the Products are defective and knew or should have known that selling such Products to Plaintiff and class members constituted a breach of the implied warranty of merchantability.

105.      As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members bought the Product without knowledge of their

nonconformance.

106.    As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members have suffered damages and did not receive the benefit of their bargain.

107.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, plaintiff and class members have suffered loss.

## COUNT V
## NEGLIGENT MISREPRESENTATION (All States)

108.    Plaintiff incorporates by reference all preceding paragraphs.

109.    Defendant, directly or through their agents and employees, made false representations, concealments, and omissions to Plaintiffs and members of the Class.

110.    Defendant has failed to fulfill their duties to disclose the material facts in making the representations to Plaintiff and members of the Class.

111.    The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

112.    Defendant knew or reasonably should have known that the representations were not true.   Defendant made and intended the misrepresentations to induce the reliance of Plaintiff and members of the Class.

113.    Plaintiff and members of the Class would have acted differently had they not been misled. They would not have paid money, paid less money or purchased an alternative product.

114.    Defendant has an obligation to correct the misinformation that was disseminated through their advertising of the Products.    By not informing Plaintiffs and members of the Class, Defendant breached their duty. Defendant also profited financially as a result of this breach.

115.    Plaintiff and members of the Class relied upon these false representations and

omissions by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

116.     Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on all those monies, the specific amount to be determined at trial.

117.     Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiff and members of the Class.

118.     Plaintiffs and members of the Class are entitled to punitive damages.

## COUNT VI

## FRAUD

119.     Plaintiff incorporates by reference all preceding paragraphs.

120.     Defendant intentionally made materially false and misleading representations regarding the Products.

121.     Plaintiff and members of the Class were induced by, and relied on, Defendant's false and misleading packaging, representations and omissions and did not know at the time that they were purchasing the Products that did not perform as claimed.

122.     Defendant knew or should have known of their false and misleading labeling, packaging and misrepresentations and omissions.   Nevertheless, Defendant continued to promote and market the products in a deceptive and misleading manner to induce customers to purchase the Product.

123.     As a proximate result of Defendant's conduct, Plaintiff and members of the Class suffered damages in an amount to be determined at trial.

## COUNT VII

## UNJUST ENRICHMENT

124.     Plaintiff incorporates by reference all preceding paragraphs.

125.     Defendant received proceeds from their sale of the goods, which were purchased by Plaintiff and the Class for an amount far greater than the reasonable value because the Product did not work as promised.

126.     Plaintiff and the Class reasonably believed that the Defendant's goods would function as advertised and warranted, and did not now, nor could have known, that the Product would not perform as promised at the time of purchase.

127.     Defendant knows of and appreciates the benefit conferred by Plaintiff and the Class and has retained the benefit notwithstanding their knowledge that the benefit is unjust.

128.     It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and the Class given that Products were not what Defendant purported them to be.

129.     It would be unjust and inequitable for Defendant to retain the benefit, warranting disgorgement to Plaintiff and the Class of all monies paid for the products, and/or all monies paid for which Plaintiffs and the Class did not receive benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all members of the Class, pray for judgment as follows:

A.     Certifying the proposed Class as requested herein;

B.     Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.       Declaring that Defendant has committed the violations of law alleged herein;

D.       Providing for any and all injunctive relief the Court deems appropriate;

E.       Awarding statutory damages in the maximum amount for which the law provides;

F.       Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G.       Providing for any and all equitable monetary relief the Court deems appropriate;

H.       Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I.       Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

J.       Awarding pre- and post-judgment interest to the extent the law allows; and

K.       For such further relief as this Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated:   January ___, 2021

*/s/ Spencer Sheehan*
SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
60 Cutter Mill Road, Suite 409
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

LAW OFFICE OF JAMES CHUNG
James Chung

43-22 216th Street
Bayside, NY 11361
Telephone: (718) 461-8808
Facsimile: (929) 381-1019
*jchung_77@msn.com*

*Attorneys for Plaintiff*