# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Lori Marie Turk, Luann Rutherford, individually and on behalf of all others similarly situated, | 7:21-cv-00270-KMK |
| Plaintiffs, | |
| - against - | First Amended Class Action Complaint |
| Rubbermaid Incorporated, | |
| Defendant | Jury Trial Demanded |

Plaintiffs allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      Rubbermaid Incorporated ("defendant") markets, manufactures and sells portable ice coolers which purport to retain ice for defined periods.

2.      The coolers include the 102 Qt. Marine Chest ("Marine Cooler") and DuraChill Wheeled 5-Day ("DuraChill Cooler") (collectively, the "Products"), which clam to "keep" or retain ice for five days.

3.      "Ice retention" has no industry standard definition.

4.      This is important because the places coolers are used generally will not sell ice.

5.      Defendant defines "ice retention" as the amount of time by which there will be no ice remaining in the cooler.

6.      However, consumers do not understand "ice retention" in the same way.

7.      Rather, they want to know how long their coolers can retain enough ice to effectively keep its contents at temperatures where the food, beverages and/or caught fish, will not spoil.

8.      The ice retention claims for the Marine Cooler, 102 qt., purchased by Plaintiff Turk,

are located on the product, via stickers, and through Defendant's third-party partners, such as Lowes, Home Depot, Amazon and Walmart.

9.      On Home Depot's website, the representations state that it "Keeps Ice – Up to 5 Days at 90 degrees F."



10.     The ice retention claims for the DuraChill Cooler, 45 qt, purchased by Plaintiff Rutherford, are made online and through labeling affixed to the Product, which prominently state it will retain ice for "5 Days."



11.     Defendant expressly warrants that the Marine and DuraChill Coolers were "free from defects in material and workmanship for a period of one year from the date of the original purchase."

**RUBBERMAID 1 YEAR LIMITED WARRANTY**

Rubbermaid warrants to the original owner that this product is free from defects in material and workmanship for a period of one year from the date of the original purchase. If this product is defective when used as intended under normal household conditions within the specified period, Rubbermaid will replace the product, send a replacement part or issue a refund (at our option) when the consumer provides a proof of purchase (either a bill of sale, receipted invoice, or other proof that the product is within the warranty period), along with a full description of the defect, to

12.     For the Marine Cooler, no qualifying information is provided with the "Up to 5 days" claim.

13.     For the DuraChill Cooler, a small asterisk leads to a statement in fine print and faintly visible which qualifies the "5 day" claim by indicating this was at 90 degrees Fahrenheit and "under test conditions."

14.     However, real world conditions involve users opening and closing the cooler, which lets cold air escape and warm air in, and significantly impacts the ice retention abilities.

15.     The ice retentions claims are false, deceptive and misleading for multiple reasons.

16.     According to an independent evaluation by Outdoor Gear Lab, the DuraChill Cooler did not retain any ice for five days.



17.    More significantly, the temperature inside the DuraChill failed to remain below 40°F beyond the second day.

18.    According to the FDA, when perishable food, such as meat, poultry, fish and eggs, are subject to temperatures above 40°F for two hours or more, it is no longer safe to consume.

19.    Other refrigerated foods are no longer considered safe to consume after four hours above 40°F.

20.    This means that the DuraChill Cooler would be unable to be safely used on a weekend trip which begins Friday afternoon, because by Sunday, the contents will have been held at temperatures exceeding 40°F beyond four hours.

21.    The ability of a cooler to maintain temperatures to preserve food is also affected by its construction.

22.    Outdoor Gear Lab reported what many users of the DuraChill Cooler have experienced – that its hinges lack durability.



Many have complained about a lack of durability in the DuraChill's hinges.

Photo: Max Mutter

23.    For instance, out of 246 reviews on Amazon.com, 13, or five percent, mention that the hinges on the DuraChill Cooler are not secure and easily fall off.

24.    The result is that the lid of the cooler is unable to form the airtight seal that is required for maintaining contents at food-safe conditions.

25.    The Marine Cooler is also unable to retain ice for five days and keep food at temperatures such that it can be safely consumed, beyond two days.

26.    representations that the Coolers will retain ice "up to" five days is misleading because consumers will interpret this as meaning five hours is the standard length of time they can expect for the cooler to maintain ice.

27.    However, because the actual duration is significantly less than this figure, "up to" creates a false expectation of the Coolers' capabilities.

28.     Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of products, relative to itself and other comparable products or alternatives.

29.     The value of the Products plaintiffs purchased were materially less than their values as represented by defendant.

30.     Defendant sold more coolers and at a higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

31.     Had Plaintiffs known the Products would not be able to keep ice for five days – and that they could not keep food at safe temperatures beyond two days – they would not have bought the Products or would have paid less for them.

## The <u>Jurisdiction and Venue</u>

32.     This Court has jurisdiction because the parties are citizens of different states. 28 U.S.C. § 1332(d).

33.     Plaintiff Judith Shephard is a citizen of New York.

34.     Defendant Rubbermaid Incorporated is a Ohio corporation with a principal place of business in Huntersville, Mecklenburg County, North Carolina.

35.     The amount in controversy, including statutory and monetary damages, exceeds $5 million, exclusive of interest and costs.

36.     Venue is proper because plaintiff resides in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## <u>Parties</u>

37.     Plaintiff Lori Turk is a citizen of Walden, Orange County, New York.

38.     Plaintiff Luann Rutherford is a citizen of Staten Island, Richmond County, New

York.

39.     Defendant Rubbermaid Incorporated, is an Ohio corporation with a principal place of business in Huntersville, North Carolina, Mecklenburg County.

40.     Defendant is a global leader in the production of household and outdoor products, including coolers and thermoses.

41.     Plaintiff Turk bought the Rubbermaid Marine Cooler – 102 qt, for no less than $109.99, at Walmart, 1201 NY-300, Newburgh, NY 12550, between 2019 and 2020.

42.     Plaintiff Turk relied on representations on the Product and on websites selling the Product, including Walmart, Amazon and/or Home Depot, which all touted the Product's ability to retain ice for five days.

43.     Plaintiff Rutherford bought the Rubbermaid DuraChill Cooler – 45 qt, for no less than $45.00, at CVS, 778A Manor Rd, Staten Island, NY 10314, between 2019 and 2020.

44.     Plaintiff Rutherford relied on representations on the DuraChill Cooler and on websites selling the DuraChill Cooler, including Walmart, Amazon and/or Home Depot, which all touted the Product's ability to retain ice for five days.

45.     The coolers purchased by Plaintiffs failed to retain ice for five days and did not even keep food safe – below 40 degrees Fahrenheit – beyond two days.

46.     Plaintiffs used the coolers for typical events, such as birthday parties, outdoor gatherings, picnics and/or barbecues.

47.     Plaintiff Rutherford experienced issues with the hinges of the DuraChill Cooler which compromised and reduced its ability to keep items cold.

48.     Plaintiffs bought the coolers identified here instead of other coolers that were the same price or less, based on representations they would keep ice for five days, and did not expect

the coolers would be unable to prevent food from spoiling beyond two days.

Class Allegations

49.   The class will consist of all New York citizens who purchased the Marine and DuraChill Coolers during the statutes of limitations for each cause of action alleged.

50.   Common questions of law or fact predominate and include whether defendant's representations and practices were and are misleading and if plaintiffs and class members are entitled to damages.

51.   Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

52.   Plaintiffs are adequate representative because their interests do not conflict with other members.

53.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

54.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

55.   Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

56.   Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

57.   Plaintiffs incorporate by reference all preceding paragraphs.

58.   Plaintiffs and class members desired to buy coolers which could retain ice for five days and relied on defendant's representations.

59.     Plaintiffs understood ice retention meant the coolers would keep food at temperatures at which it could be safely consumed.

60.     Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

61.     Defendant misrepresented the Products through statements, omissions, ambiguities, half-truths and/or actions.

62.     Plaintiffs and class members would not have used the Products or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

63.     The Products were manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiffs and class members that it could keep ice for five days, and keep food edible for that time.

64.     Defendant offered a one-year warranty, which it breached because the Products were unable to provide the ice retention capabilities they were advertised with.

65.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the coolers.

66.     This duty is based on Defendant's outsized role in the market for these types of Products.

67.     Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

68.     Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

69.     The Products did not conform to its affirmations of fact and promises due to

defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

70.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

71.   Defendant had a duty to truthfully represent the Products, which it breached.

72.   This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

73.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

74.   Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Products.

75.   Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Fraud

76.   Defendant misrepresented and/or omitted the attributes and qualities of the Products.

77.   Defendant's fraudulent intent is evinced by its knowledge that the Products' abilities were not consistent with its representations.

Unjust Enrichment

78.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary and statutory damages and interest pursuant to common law and statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   June 16, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

Law Office of James Chung
James Chung
43-22 216th Street
Bayside, NY 11361
Telephone: (718) 461-8808

Facsimile: (929) 381-1019
jchung_77@msn.com