UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LORI MARIE TURK *and* LUANN
RUTHERFORD, individually and on behalf
of all others similarly situated,

Plaintiffs,

v.

RUBBERMAID INCORPORATED,

Defendant.

---

No. 21-CV-270 (KMK)

OPINION & ORDER

James Chung, Esq.
Law Office of James Chung
Bayside, NY
*Counsel for Plaintiffs*

Spencer Sheehan, Esq.
Sheehan & Associates, P.C.
Great Neck, NY
*Counsel for Plaintiffs*

Jeffrey Skinner, Esq.
Brett Clements, Esq.
ArentFox Schiff LLP
Washington, DC
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Lori Marie Turk ("Turk") and Luann Rutherford ("Rutherford"; together, "Plaintiffs")

bring this putative class action against Rubbermaid Incorporated ("Defendant"), alleging that the

labeling on Defendant's 102-Quart Marine Chest Cooler and 45-Quart DuraChill Cooler is

deceptive and misleading. Plaintiffs assert claims for damages against Defendant for

(1) violations of §§ 349 and 350 of the New York General Business Law ("GBL"), N.Y. G.B.L.

§§ 349, 350; (2) violation of the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 201,

et seq.; (3) common law breach of express warranty; (4) common law breach of the implied

warranty of merchantability; (5) common law negligent misrepresentation; (6) common law

fraud; and (7) unjust enrichment. (*See generally* First Am. Compl. ("FAC") (Dkt. No. 18).)

Plaintiffs also seek injunctive relief to correct the alleged misrepresentations. (*See id.* at 11.)

Before the Court is Defendant's Motion To Dismiss the First Amended Complaint (the

"Motion"). (*See* Not. of Mot. (Dkt. No. 25).) For the foregoing reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from the First Amended Complaint ("FAC") and assumed

to be true for the purposes of resolving the instant Motion. *See Div. 1181 Amalgamated Transit*

*Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per

curiam).

Defendant is a company that markets and manufactures household and outdoor products,

including coolers and thermoses. (*See* FAC ¶¶ 1, 40.) Defendant's coolers include portable ice

coolers, which purport to retain ice for defined period of times. (*See id.* ¶ 1.) This Action

involves two such portable ice coolers: the 102-Quart Marine Chest Cooler ("Marine Cooler")

and 45-Quart DuraChill Cooler ("DuraChill Cooler"; together, the "Products"). (*See id.* ¶ 2.)

Defendant represents on the labels of both Products that the Products "keep" or retain ice

for five days, which means that ice will remain intact in the Products for five days. (*See id.* ¶¶ 2,

5.) Specifically, Plaintiffs allege that Defendant represents that the Marine Cooler "Keeps Ice –

Up to 5 Days at 90° F," and that this representation is included "on the product, via sticker" and

is communicated "through Defendant's third-party partners, such as Lowes, Home Depot,

Amazon[,] and Walmart." (*Id.* ¶¶ 8–9.) The Marine Cooler's label includes no other qualifier as

to its ice retention. (*See id.* ¶ 12.) Plaintiffs allege that Defendant represents that the DuraChill

Cooler will retain ice for "5 days," and that this representation is "made online and through labeling affixed to the" DuraChill Cooler. (*Id.* ¶ 10.) The DuraChill Cooler's label also includes "a small asterisk" which "leads to a statement in fine print and faintly visible which qualifies the '5 day' claim by indicating this was at 90 degrees Fahrenheit and 'under test conditions.'" (*Id.* ¶ 13.) Separately, Defendant provides a one-year limited warranty, which warrants that the Products are "free from defects in material and workmanship for a period of one year from the date of the original purchase." (*Id.* ¶ 11.)

Plaintiffs allege that consumers understand ice retention to refer to "how long their coolers can retain enough ice to effectively keep its contents at temperatures where the food, beverages[,] and/or caught fish, will not spoil," and interpret Defendant's representations that the Products will retain ice for up to five days to mean that the Products will maintain ice and keep food at a safe temperature for five days. (*See id.* ¶¶ 7, 26.) However, Plaintiffs allege that the Products do not retain ice for five days under real world conditions (i.e., opening and closing the Products' tops), and do not maintain a food-safe temperature of 40° Fahrenheit beyond two days. (*See id.* ¶¶ 14, 16–19, 25.) Plaintiffs allege that one reason the DuraChill Cooler fails to perform as advertised is because its hinges are not durable and cannot form the airtight seal required to maintain its contents at the required temperatures; 13 of the 246 reviews for the DuraChill Cooler on Amazon.com mention issues with the DuraChill Cooler's hinges. (*See id.* ¶¶ 21–24.)

Turk purchased the Marine Cooler "for no less than $109.99, at Walmart, 1201 NY-300, Newburgh, NY 12550, between 2019 and 2020." (*Id.* ¶ 41.) In purchasing the Marine Cooler, Turk alleges that she "relied on representations on the Product and on websites selling the Product, including Walmart, Amazon[,] and/or Home Depot, which all touted the [Marine Cooler's] ability to retain ice for five days." (*Id.* ¶ 42.) Rutherford purchased the DuraChill

Cooler "for no less than $45.00, at CVS, 778A Manor Rd[.], Staten Island, NY 10314, between 2019 and 2020." (*Id.* ¶ 43.)  In purchasing the DuraChill Cooler, Rutherford alleges that she "relied on representations on the DuraChill Cooler and on websites selling the DuraChill Cooler, including Walmart, Amazon[,] and/or Home Depot, which all touted the [DuraChill Cooler's] ability to retain ice for five days." (*Id.* ¶ 44.)  Plaintiffs allege that they "used the [P]roducts for typical events, such as birthday parties, outdoor gatherings, picnics[,] and/or barbecues," and the Products "failed to retain ice for five days and did not even keep food safe – below 40 degrees Fahrenheit – beyond two days." (*Id.* ¶¶ 45–46.)  Rutherford also alleges that she "experienced issues with the hinges of the DuraChill Cooler[,] which compromised and reduced its ability to keep items cold." (*Id.* ¶ 47.)

   B.  Procedural History

   Plaintiffs filed their initial Complaint on January 14, 2021.  (*See* Dkt. No. 2.)  On May 24, 2021, Defendant filed a pre-motion letter in anticipation of filing a motion to dismiss. (*See* Dkt. No. 11.)  Plaintiffs filed the FAC on June 16, 2021.  (*See* FAC.)  On June 28, 2021, Defendant again filed a pre-motion letter in anticipation of filing a motion to dismiss.  (*See* Dkt. No. 19.)  Following Plaintiffs' response to Defendant's pre-motion letter, (*see* Dkt. No. 21), the Court held a pre-motion conference on August 2, 2021, (*see* Dkt. (minute entry for Aug. 2, 2021)).  Pursuant to the briefing schedule adopted at this conference, Defendant filed the instant Motion on August 20, 2021.  (*See* Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. No. 26).)  Plaintiffs filed their Opposition on September 20, 2021, (*see* Pls.' Mem. of Law in Opp'n to Mot. To Dismiss ("Pls.' Mem.") (Dkt. No. 27)), and Defendant filed its Reply on October 4, 2021, (*see* Def.'s Reply in Supp. of Mot. To Dismiss ("Def.'s Reply Mem.") (Dkt. No. 28)).  On January 19, 2022, Defendant notified the Court of persuasive authority from another judge in this district.  (*See* Dkt. No. 29.)

## II.  Discussion

### A.  Standard of Review

Defendant moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* Not. of Mot.)  "The standard of review for a motion to dismiss under Rule 12(b)(1) is substantively 'identical' to the standard for a Rule 12(b)(6) motion."  *McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*, No. 21-639, 2021 WL 5286647, at *1 (2d Cir. Nov. 15, 2021) (summary order) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999)).  "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff."  *Gonazalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quotation marks omitted).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)."  *Id.* (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also Gerasimov v. Amalgamated Hous. Corp.*, No. 21-CV-1760, 2021 WL 6338522, at *3 (S.D.N.Y. Dec. 17, 2021) ("The only difference between Rule 12(b)(1) and 12(b)(6) motions is the allocation of the burden of proof.").

### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has the authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)).  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when a district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank*

*Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted); *see also McNeil*, 2021 WL 5286647, at *1 ("Dismissal is proper under Rule 12(b)(1) for lack of subject matter jurisdiction 'when the district court lacks the statutory or constitutional power to adjudicate' the claim, such as when Article III standing is not met." (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))). "In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings." *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778, 2019 WL 1437823, at *2 (S.D.N.Y. Mar. 29, 2019) (citation omitted).

### 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

6

requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting FED. R. CIV. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95 (citation omitted). Additionally, "when ruling on Rule 12(b)(6) motions to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. Mar. 26, 2021) (same).

Finally, fraud claims—including common law fraud claims—are subject to the heightened pleading standard set forth in Rule 9(b). *See Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013) ("[A] claim for common law fraud under New York law must satisfy the requirements of the heightened pleading standard under Federal Rule of Civil Procedure 9(b)." (collecting cases)). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). However, courts "'must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding

condition of mind for a license to base claims of fraud on speculation and conclusory allegations,'" rather "'plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.'"  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).  "An inference is 'strong' if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 460 F. Supp. 3d 481, 492 (S.D.N.Y. 2020) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015)).

        B.  Analysis

        Defendant argues that (1) Plaintiffs' GBL claims fail because Plaintiffs fail to allege that they saw the supposedly misleading statements on the Products' labels before purchasing them and because no reasonable consumer would be misled by Defendant's representations on the Products' labels, (*see* Def.'s Mem. 6–8); (2) Plaintiffs' claim for breach of express warranty fails because Plaintiffs failed to allege that they provided Defendant with pre-suit notice and because Turk has failed to allege defects in materials or workmanship (i.e., the only defects covered by her express warranty), (*see id.* at 9–11); (3) Plaintiffs cannot state a cognizable claim for breach of the implied warranty of merchantability because Plaintiffs failed to allege privity with Defendant, (*see id.* at 11–12); (4) Plaintiffs' MMWA claim fails because Plaintiffs have failed to state a cognizable claim for breach of an express or implied warranty, (*see id.* at 12–13); (5) Plaintiffs cannot adequately state a claim for negligent misrepresentation because Plaintiffs have failed to allege the existence of a special relationship with Defendant, (*see id.* at 13–15); (6) Plaintiffs fail to state a claim for fraud because Plaintiffs have failed to plead scienter, (*see id.* at 15–16); (7) Plaintiffs' claim for unjust enrichment must be dismissed as duplicative, (*see id.* at 17); and (8) Plaintiffs lack standing to seek injunctive relief, (*see id.* at 18–19).

8

The Court addresses each argument in turn, beginning with Defendant's argument as to Plaintiffs' lack of standing to pursue injunctive relief, and thus, this Court's subject matter jurisdiction.

### 1. Standing to Seek Injunctive Relief

Article III of the Constitution restricts federal judicial power to the resolution of cases and controversies. U.S. CONST. art. III, § 2. "That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). "Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "[A] plaintiff must demonstrate standing for each claim and form of relief sought," *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003)), and a plaintiff "seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury," *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). And, "[a] plaintiff seeking to represent a class must personally have standing." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

Defendant argues that Plaintiffs have failed to allege any real or immediate threat of future injury sufficient to confer standing over their claim for injunctive relief, because armed with "the knowledge they now have, Plaintiffs cannot plausibly claim that they will be deceived

into purchasing [Defendant's Products] again." (Def.'s Mem. 18–19 (quotation marks omitted).)

The Court agrees, as, it would appear, do Plaintiffs, because they wisely abandoned this claim by

failing to include it in their Opposition to Defendant's Motion. (*See generally* Pls.' Mem.) *See*

*also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 807 (S.D.N.Y. 2021) ("A court may,

and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's

arguments that the claim should be dismissed." (alterations and citation omitted)); *Laface v. E.*

*Suffolk BOCES*, No. 18-CV-1314, 2019 WL 1959489, at *8 (E.D.N.Y. May 2, 2019) ("In the

Second Circuit, a plaintiff's failure to respond to contentions raised in a motion to dismiss

constitute[s] an abandonment of those claims." (alteration and quotation marks omitted)

(collecting cases)). Because Plaintiffs have abandoned their claim for injunctive relief, it is

subject to dismissal.

　　　　　Nonetheless, the Court emphasizes that the Second Circuit has squarely foreclosed the

possibility of injunctive relief for past purchasers, like Plaintiffs here. *See Berni v. Barilla*

*S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) ("[P]ast purchasers of a consumer product who claim to

be deceived by that product's packaging . . . have, at most, alleged a past harm."). The *Berni*

court explained that "[i]n the first place, past purchasers are not bound to purchase a product

again—meaning that once they become aware they have been deceived, that will often be the last

time they will buy that item." *Id.* "But even if they do purchase it again, there is no reason to

believe that [past purchasers] will incur a harm anew," because "they will not again be under the

illusion that" the product meets the standard they alleged was promised on the deceptive label.

*Id.* at 148. Rather, "next time they buy one of the [products], they will be doing so with exactly

the same level of information they claim they were owed from the beginning." *Id.* It is for this

reason that courts routinely dismiss claims for injunctive relief brought by past purchasers, and

10

that this Court would have dismissed Plaintiffs' claim for injunctive relief here even if Plaintiffs had not abandoned it. *See, e.g.*, *Valcarel v. Ahold U.S.A., Inc.*, — F. Supp. 3d — , 2021 WL 6106209, at *10 (S.D.N.Y. Dec. 22, 2021) (finding that plaintiff, who alleged that "she is unable to rely on the accuracy of the product's from label in the future, which causes her to avoid purchasing the product, even though she would otherwise like to do so," lacked standing to seek injunctive relief under *Berni*); *Brown v. Kerry Inc.*, No. 20-CV-9730, 2021 WL 5446007, at *11 (S.D.N.Y. Nov. 22, 2021) (finding that the plaintiff, who alleged that she "intends to, seek[s] to, and will purchase the [p]roduct again when she can do so with the assurance that [the] [p]roduct's labels are consistent with the [p]roduct's components," lacked standing to seek injunctive relief because "such conditional statements of a consumer's intent to repurchase a product are insufficient to allege a likelihood of future injury" (quotation marks omitted)), *report and recommendation adopted*, 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022); *Rivera v. S.C. Johnson & Son, Inc.*, No. 20-CV-3588, 2021 WL 4392300, at *8–9 (S.D.N.Y. Sept. 24, 2021) (finding that the plaintiffs, who alleged that they would buy the products again "if assured they did not contain components which were toxic and had the harsh physical and environmental effects they did," did not have standing to seek injunctive relief because "[t]he [c]ourt cannot conceive of a scenario in which these [p]laintiffs would again be deceived by the [p]roducts' allegedly misleading representations, let alone what kind of injunctive relief would prevent such a deception" (alterations and quotation marks omitted)).

Because Plaintiffs lack standing to pursue injunctive relief, either on their own behalf or on behalf of the proposed class, *see Nicosia*, 834 F.3d at 239, the Court dismisses all claims for injunctive relief.[1]

### 2.  New York General Business Law §§ 349 and 350 Claims

"Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business, trade[,] or commerce,' whereas § 350 prohibits 'false advertising in the conduct of any business, trade[,] or commerce.'"  *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations omitted) (quoting N.Y. G.B.L. §§ 349, 350). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195, n.1 (N.Y. 2002)); *see also Barreto*, 518 F. Supp. 3d at 802 (same); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found that the scope of § 350 is as broad as that of § 349 . . . and that its essential elements are the same" (alteration in original) (citation omitted)). To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Cosgrove*, 520 F. Supp. 3d at 575 (same); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (same).

---

[1] The Court reiterates its warning to Plaintiffs' counsel included in its recent decision in *Gordon v. Target Corporation*, No. 20-CV-9589, Dkt. No. 23, at 20 n.3 (S.D.N.Y. Mar. 18, 2022).  Should Plaintiffs' counsel attempt to bring another plainly frivolous claim for injunctive relief on behalf of a past purchaser before this Court, the Court will impose Rule 11 sanctions.

### a. Consumer-Oriented Conduct

Defendant appears to concede—or at least, does not contest for purposes of its Motion—
that its conduct was consumer-oriented.  (*See generally* Def.'s Mem.)  "A defendant engages in
'consumer-oriented' activity if [the company's] actions cause any 'consumer injury or harm to
the public interest.'"  *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (quoting
*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).  This requirement is
liberally construed, *id.*, and "may be satisfied by showing that the conduct at issue 'potentially
affect[s] similarly situated consumers,'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir.
2010) (alteration in original) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine
Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).  Here, Plaintiffs allege that Defendant is
responsible for "market[ing], manufactur[ing][,] and sell[ing]" the Products, which are sold via
multiple different third-party partners, including "Lowes, Home Depot, Amazon[,] and
Walmart."  (FAC ¶¶ 1, 8, 9, 23.)  These allegations are sufficient to satisfy the first element of
Plaintiffs' GBL claims.  *See Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999)
(observing that GBL §§ 349 and 350 "apply to virtually all economic activity, and their
application has been correspondingly broad" (footnote omitted) (collecting cases)); *Sheth v. N.Y.
Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (App. Div. 2000) (noting that "consumer-oriented"
requirement may be satisfied "by a showing that the practice has a broader impact on the
consumer at large").

### b. Materially Misleading Conduct

Defendant instead focuses on the second elements of Plaintiffs' GBL claims, arguing that
Plaintiffs cannot state a cognizable claim for violations of GBL §§ 349 and 350 because no
reasonable consumer would find Defendant's representations on the Products' labels to be
misleading.  (*See* Def.'s Mem. 7–8.)  The Court agrees.

To survive a motion to dismiss, Plaintiffs "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Twohig*, 519 F. Supp. 3d at 161 (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-6409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)). "Instead, plaintiffs must 'plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Sarr*, 2020 WL 729883, at *3). And, "[a]lthough the question of whether a business practice or advertisement is misleading to a reasonable consumer is generally a question of fact, it is 'well settled that a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer.'" *Id.* (alteration omitted) (quoting *Wynn*, 2021 WL 168541, at *2); *see also Brown*, 2021 WL 5446007, at *2 (same). Here, Plaintiffs have failed to allege that a reasonable consumer would be deceived by the Products' labels.

Plaintiffs allege that the Products' labels are misleading because they indicate that the Products will retain ice for up to five days, when the reality is that when the Products are used under normal conditions, they will not retain ice for a full five days. (*See* FAC ¶¶ 1–31.) Plaintiffs also allege that a reasonable consumer would interpret a phrase like "Keeps Ice – Up to 5 Days at 90 degrees F" to mean that the Products would maintain a food-safe temperature of 40° Fahrenheit or lower for five full days. (*See id.*) And in reality, the Products fail to maintain a food-safe temperature of 40° Fahrenheit or lower beyond two days. (*See id.*) However, "in determining whether a reasonable consumer would be misled[,] the Court must consider the entire context of the package." *Sarr*, 2020 WL 729883, at *4 (alterations omitted) (quoting *Fermin v. Pfizer*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016)). Thus, "if a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the

confusion, the court should ask whether the misleading element is ambiguous.  If so, the clarification can defeat the claim." *Id.* (alteration omitted) (quoting *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-CV-2250, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019)); *see also Garadi v. Mars Wrigley Confectionary US, LLC*, Nos. 21-CV-2309, 21-CV-1996, 2021 WL 2843137, at *2 (E.D.N.Y. July 6, 2021) (explaining that "determining the likelihood that reasonable consumers would be misled entails viewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of the product as a whole" (quotation marks and alterations omitted)).  When considering the full context of both Products' labels, the Court finds that no reasonable consumer could be misled.

Plaintiffs allege that the DuraChill Cooler's label prominently states that it will retain ice for "5 days," a statement accompanied by an asterisk leading to another statement "which qualifies the '5 day' claim by indicating this was at 90 degrees Fahrenheit and 'under test conditions.'"  (FAC ¶¶ 10, 13.)  Plaintiffs allege that the Marine Cooler's label states that it "Keeps Ice – Up to 5 Days at 90 degrees F."  (*Id.* ¶ 9.)  The Court fails to understand how a reasonable consumer could interpret these statements to mean that the Products would always retain ice for a full five days or more with normal use or would maintain a food-safe temperature of 40° Fahrenheit or lower for five days.  First, Plaintiffs do not allege that the Products' labels make any representation at all as to what temperature the Products can maintain, what temperature constitutes a food-safe temperature, or how long the Products can maintain a food-safe temperature.  As such, no reasonable consumer could be deceived into believing that the Products would maintain a food-safe temperature for any amount of time.  *See, e.g.*, *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 236–37 (E.D.N.Y. Mar. 31, 2015) (dismissing GBL § 349 claim where "the [product's] packaging in the [complaint] does not represent that the

product is safe, and cannot, therefore, amount to a material misrepresentation as a matter of law").

Second, as to the Products' representations regarding ice retention, Plaintiffs would have this Court credit the notion that a reasonable consumer would interpret the phrase "retains ice for *up to* 5 days at 90 degrees F" and "retains ice for *up to* 5 days at 90 degrees Fahrenheit *under test conditions*" to mean "retains ice for *at least* 5 days at 90 degrees F" and "retains ice for *at least* 5 days at 90 degrees Fahrenheit *with normal use*." This is simply not plausible. *See, e.g.*, *Fink v. Time Warner Cable*, 714 F.3d 739, 742 n.3 (2d Cir. 2013) (affirming the district court's finding that an advertisement that described the product as "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up" could not support a GBL § 349 claim because "the phrase 'up to' would lead a reasonable consumer to expect that speeds could be less than the advertised '3x faster' and '100x faster' speeds" (quotation marks omitted)). While Plaintiffs argue that "New York courts have held that 'up to' statement refers [sic] to the minimum level of performance and not 'a maximum period of time' as asserted by Defendant," Plaintiffs fail to identify any authority to support such a broad proposition. (Pls.' Mem. 10–11.) The only case that Plaintiffs cite is *Thompson Medical Co. v. Ciba-Geigy Corp.*, 643 F. Supp. 1190 (S.D.N.Y. 1986)—which, the Court notes, is a case from a federal court located in the Southern District of New York, not a New York court—in which the court ruled after a three-day bench trial that the plaintiff had proven through evidence at trial that consumers who read an advertisement for a weight loss product which stated that "thousands of consumers have reported to us that they lost up to 5 lbs. in the first week" "believe[d] they w[ould] lose 5 lbs. or more." *Id.* at 1200 (quotation marks omitted). Clearly, *Thompson Medical* does not stand for the broad proposition

that "New York courts" interpret "up to" statements to mean exactly the opposite as a matter of law.[2, 3]

As such, Plaintiffs cannot maintain claims for violations of GBL §§ 349 and 350 because no reasonable consumer would view the Products' labels as misleading.

### c.  Injury

Defendant also argues that Plaintiffs have failed to allege injury under GBL §§ 349 and 350 because Plaintiffs do not allege that they "actually *saw* or were *aware* of any statement on the [Products] before purchasing them."  (Def.'s Mem. 6 (emphasis in original).)  The Court, again, agrees.

"An actual injury claim under [§§] 349 and 350 typically requires a plaintiff to allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."  *Duran*, 450 F. Supp. 3d at 350 (alterations omitted) (quoting *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 195 (E.D.N.Y. 2018)).  "A plaintiff can

---

[2] Nor is the Court convinced by Plaintiffs' vague arguments concerning the Federal Trade Commission's ("FTC") interpretation of "up to" statements in advertisements and unsupported assumption that the Products' labels violate the FTC Act.  (Pls.' Mem. 11.)  Plaintiffs do not bring a claim under the FTC Act—nor could they, because "[t]he FTC Act does not provide a private right of action," *Yerushalayim v. Leichtung*, No. 19-CV-4101, 2019 WL 3817125, at *3 (E.D.N.Y. Aug. 13, 2019) (citing, inter alia, 15 U.S.C. § 45(a)(2))—thus, the FTC Act is not relevant here.

[3] Plaintiffs also interpose an argument concerning Defendant's use of the phrase "under test conditions" on the DuraChill Cooler's label.  (Pls.' Mem. 11–13.)  Plaintiffs appear to argue that Defendant's use of this phrase makes the DuraChill Cooler's label even more misleading, though the way in which Plaintiffs believe this phrase is misleading is not clear to the Court.  Plaintiffs themselves seem to recognize that a reasonable consumer understands that "test conditions" are not the same as "real life circumstance[s]," (*id.* at 12 ("Defendant ignores the rudimentary knowledge that most consumer products are tested in [a] laboratory setting *in preparation for* use in real life circumstance[s]" (emphasis added))), and do not allege that Defendant's representation that the DuraChill Cooler maintained ice for five days in Defendant's *test conditions* is not accurate, (*see generally* FAC).  As such, the Court's conclusion that the Products' labels are not deceptive to a reasonable consumer remains unchanged.

show this injury by alleging 'an overpayment, or a price premium, whereby a plaintiff pays more than she would have but for the deceptive practice.'"  *Id.* (quoting *Izquierdo v. Mondelez Int'l Inc.*, No. 16-CV-4697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016)).  However, "[t]o allege injury under a price premium theory, a plaintiff must allege not only that [the] defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product."  *Id.* (quotation marks omitted); *see also Sabatano v. Iovate Health Scis. U.S.A. Inc.*, No. 19-CV-8924, 2020 WL 3415252, at *3 (S.D.N.Y. June 22, 2020) ("A plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied." (citation omitted)); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009) ("In order to make a claim under [GBL § 350], a plaintiff must plead reliance on a false advertisement at the time the product was purchased." (citing *Andrew Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (App. Div. 2002))).

While Plaintiffs allege in a conclusory fashion that they "relied on representations on the Product[s] and on websites selling the [Products]," (FAC ¶¶ 42, 44, 58), these allegations are inadequate to demonstrate reliance sufficient to state a claim under GBL §§ 349 and 350.  *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  Plaintiffs appear to concede that they failed to allege that they actually saw or were aware of the statements in question on the Products' labels before buying them, but argue that "[s]ince it is logically impossible to rely on a statement [without] reading it, a reasonable inference can be drawn that the Plaintiffs have seen the misrepresentation."  (Pls.' Mem. 7–8.)  While a court must "draw all reasonable inferences in the plaintiff's favor" in ruling

on a motion to dismiss, *Div. 1181*, 9 F.4th at 95 (citation omitted), Plaintiffs identify no authority

for the proposition that a court may infer the factual circumstances underlying an element of a

cause of action from the conclusory recitation of what the element requires, nor is the Court

aware of any.  The Court is instead persuaded by the reasoning of Judge Briccetti, who very

recently held in a nearly identical case (also brought by Plaintiffs' counsel) that the plaintiffs'

allegations that they "purchased the coolers in reliance on the representation that they would

retain ice for five days" were "conclusory" and "c[ould not] be credited." *Zachmann v. Coleman

Co.*, No. 20-CV-9146, 2022 WL 161480, at *4 (S.D.N.Y. Jan. 18, 2022) (alteration omitted); *see

also Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*,

100 N.Y.S.3d 227, 229–30 (App. Div. 2019) (affirming dismissal of GBL § 349 claim where

"the complaint fails to allege that the [plaintiffs] ever saw the allegedly deceptive representations

that purportedly harmed them" (citing *Gale v. Int'l Bus. Machines Corp.*, 781 N.Y.S.2d 45, 47

(App. Div. 2004))).

   Accordingly, Plaintiffs' claims based on alleged violations of GBL §§ 349 and 350 are

subject to dismissal for the independent reason that Plaintiffs have failed to plead injury.

### 3.  Breach of Warranty Claims

#### a.  Breach of Express Warranty

   "An express warranty is an affirmation of fact or promise made by the seller to the buyer

which relates to the goods and becomes part of the basis of the bargain." *Barreto*, 518

F. Supp. 3d at 806 (quotation marks omitted).  To adequately state a claim for breach of an

express warranty under New York law, Plaintiffs must plead "(1) the existence of a material

statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the

contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused

by this breach." *Wynn*, 2021 WL 168541, at *7 (quoting *Goldemberg v. Johnson & Johnson*

*Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014)).  In addition, New York law requires

that the buyer, "'within a reasonable time after he discovers or should have discovered any

breach[,] notify the seller of breach or be barred from any remedy.'" *Tomasino v. Estee Lauder*

*Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (quoting N.Y. U.C.C. § 2-607(3)(a)).  To satisfy

this notice requirement, a plaintiff must "alert [the] defendant that the transaction was

troublesome," but need not "include a claim for damages or threat of future litigation."

*Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. Jan. 27, 2021)

(alterations and quotation marks omitted).  Although "[t]he sufficiency and timeliness of the

notice is generally a question for the jury," *Tomasino*, 44 F. Supp. 3d at 260 (citation omitted), to

adequately plead the pre-suit notice requirement, "plaintiff[s] must provide factual allegations—

such as the date and method plaintiff[s] sent a pre-suit notice—supporting the contention that

[they] notified [the] defendant of the alleged breach within a reasonable time," *Grossman*, 516

F. Supp. 3d at 283.

　　　Plaintiffs have failed to adequately allege that they provided Defendant with any manner

of pre-suit notice, only vaguely alleging that "Plaintiff [sic] provided or will provide notice to

[D]efendant, its agents, representatives[,] retailers and their employees" and that "Defendant

received notice and should have been aware of these issues due to complaints by regulators,

competitors, and consumers[] to its main offices." (FAC ¶¶ 67, 68.)  These allegations are

insufficient to plead pre-suit notice and avoid dismissal. *See Colpitts v. Blue Diamond Growers*,

527 F. Supp. 3d 562, 590 (S.D.N.Y. 2021) (finding allegation that "[the] [d]efendant received

notice and should have been aware of these misrepresentations due to numerous complaints by

consumers to its main office over the past several years" to be "too conclusory

and . . . unsupported by any specific factual allegations" to satisfy the notice requirement for suit

20

(quotation marks omitted)); *Grossman*, 516 F. Supp. 3d at 283 (finding that the plaintiff's

allegation that "within a reasonable time after they knew or should have known of [the]

[d]efendants' breach, [the] [p]laintiff, on behalf of herself and [c]lass [m]embers, placed [the]

[d]efendants on notice of their breach, giving [the] [d]efendants an opportunity to cure their

breach, which they refused to do" was "insufficient to plead pre-suit notice" (quotation marks

omitted)); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 WL 1614349, at *2

(S.D.N.Y. Mar. 30, 2018) (explaining that "[p]roper factual allegations should, at least, include

the date and method by which [the] [p]laintiff afforded [pre-suit] notice to [the] [d]efendant,"

and dismissing claim for breach of express warranty where "[the] [p]laintiffs failed to allege any

facts supporting the allegation that she notified [the] [d]efendant of the alleged breach within a

reasonable time after its discovery"); *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474, 2016

WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff's allegation that "[the]

[d]efendant must have been aware of [the] [p]laintiff's false and misleading advertising claims

due to similar suits pending against [the] [d]efendant" to be insufficient to plead pre-suit notice

because "[the] [p]laintiff was required to inform [the] [d]efendant, within a reasonable time, of

the alleged breach involving his own purchase").

    Plaintiffs' arguments that pre-suit notice is not required or, in the alternative, that

Plaintiffs' original Complaint constitutes notice are unavailing.  (*See* Pls.' Mem. 15.)  While

Plaintiffs are correct that there is a "line of New York cases suggesting that the notice

requirement does not apply to retail sales," *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-CV-371,

2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000) (citing *Fischer v. Mead Johnson Labs.*,

341 N.Y.S.3d 257, 259 (App. Div. 1973)), numerous courts in the Second Circuit have explained

that "this exception appears to be exclusively applied where a party alleges physical, in addition

to economic, injury," *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143–44 (E.D.N.Y. 2018) (collecting cases); *see also Colpitts*, 527 F. Supp. 3d at 589 (explaining that "[b]ecause [the] [p]laintiff only alleges economic injury in the form of a price premium paid for the [p]roduct, this exception—to the extent it exists at all—is inapplicable," and dismissing breach of express warranty claim for failure to allege pre-suit notice). And, while Plaintiffs are correct that there is limited authority for the proposition that a plaintiff's pleadings could constitute pre-suit notice under certain circumstances, (*see* Pls.' Mem. 15), the Court is persuaded by Judge Failla's reasoning in *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020), in which she explained that the case from which this limited authority stems (and on which Plaintiffs rely)—*Panda Capital Corp. v. Kopo Int'l, Inc.*, 662 N.Y.S.2d 584 (App. Div. 1997)—does not stand "for a broad rule that a filed complaint qualifies as sufficient and timely notice." 440 F. Supp. 3d at 244–45.

      Accordingly, Plaintiffs' claim for breach of express warranty is dismissed.[4]

### b.  Breach of the Implied Warranty of Merchantability

      "Under the New York Uniform Commercial Code . . . , 'a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to

---

[4] Defendant also argues that Turk's express warranty claim based on Defendant's one-year limited warranty is subject to dismissal because Turk fails to allege defects in materials or workmanship. (*See* Def.'s Mem. 10–11.) It is not clear to the Court where in the FAC Turk brings this express warranty claim, (*see generally* FAC), but the Court need not separately rule on it because Plaintiffs have failed to plead the required pre-suit notice for the reasons explained above. And, in any event, to the extent Turk brought a separate express warranty claim, Plaintiffs have abandoned it by failing to address it in their Opposition to Defendant's Motion. (*See generally* Pls.' Mem.) *See also Barreto*, 518 F. Supp. 3d at 807 ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (alterations and citation omitted)); *Laface*, 2019 WL 1959489, at *8 ("In the Second Circuit, a plaintiff's failure to respond to contentions raised in a motion to dismiss constitute[s] an abandonment of those claims." (alteration and quotation marks omitted) (collecting cases)).

goods of that kind.'"  *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 8 (S.D.N.Y. 2020)

(quoting N.Y. U.C.C. § 2-314(1)).  "To be merchantable, goods 'must be fit for the ordinary

purposes for which such goods are used; and conform to the promises or affirmations of fact

made on the label or container if any.'"  *Id.* at 9 (alterations omitted) (quoting N.Y. U.C.C. § 2-

314(2)).  "However, no implied warranty will extend from a manufacturer to a remote purchaser

not in privity with the manufacturer where only economic loss and not personal injury is

alleged."  *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-CV-1228, 2020 WL 777462, at

*11 (N.D.N.Y. Feb. 18, 2020) (quotation marks omitted); *accord Aracena v. BMW of N. Am.,

LLC*, 71 N.Y.S.3d 614, 616 (App. Div. 2018) (same) (collecting cases); *see also Pyskaty v. Wide

World of Cars, LLC*, No. 15-CV-1600, 2019 WL 917153, at *11 (S.D.N.Y. Feb. 25, 2019)

(noting the "well-established principle in New York that, absent privity, a plaintiff cannot

recover damages for economic loss based upon breach of implied warranty").

    While Plaintiffs recognize this longstanding principle, (*see* Pls.' Mem. 16–17), Plaintiffs

argue that "Plaintiffs and [Defendant] are in privity through unilateral offer [sic] that was

accepted by . . . Plaintiffs," (*id.* at 17).  Defendant calls this argument "nonsensical[]," (Def.'s

Reply Mem. 5), and the Court must agree.  Setting aside the fact that Plaintiffs have cited no

authority for this argument, Plaintiffs offer no explanation for how a contract could have been

created between Plaintiffs and Defendant when Plaintiffs do not allege that they purchased the

Products from Defendant.  (*See* FAC ¶¶ 41 (explaining that Turk bought the Marine Cooler from

Walmart); 43 (explaining that Rutherford bought the DuraChill Cooler from CVS).)  Rather,

Plaintiffs only allege to be remote purchasers, who definitionally are not in privity with the

manufacturers of the products that they buy.  *See, e.g.*, *Zachmann*, 2022 WL 161480, at *5 ("A

remote purchaser, such as a retail purchaser, is not in privity with a good's manufacturer." (citing

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015))); *Arthur Glick*

*Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 408 (App. Div. 2008) (explaining

that where the plaintiff purchased a yacht with an engine manufactured by Caterpillar, Inc. from

a third-party boat dealer, "there [was] no contract between [the] plaintiff and Caterpillar" and

that "[t]he extensive list of dealers separating [the] plaintiff from Caterpillar renders [the]

plaintiff a remote purchaser who is barred as a matter of law from claiming economic damages

due to Caterpillar's breach of implied warranties"); *cf. Suffolk County v. Long Island Lighting*

*Co.*, 728 F.2d 52, 62–63 (2d Cir. 1984) (explaining that "[b]ecause [strict products liability] law

deems the manufacturer's duty great and the injury inflicted serious, it bends privity of contract

requirements to allow remote purchasers to sue the manufacturer," but that an injury based on

solely economic loss "is not considered sufficiently severe to warrant the abrogation of the

privity requirement").

 Accordingly, Plaintiffs' claim for breach of the implied warranty of merchantability is

dismissed.

### c.  MMWA

 "To state a claim under the MMWA, plaintiffs must adequately plead a cause of action

for breach of written or implied warranty under state law," *Garcia v. Chrysler Grp. LLC*, 127

F. Supp. 3d 212, 232 (S.D.N.Y. 2015), because "the federal statute incorporates state law claims

of breach of express and implied warranties," *Chiarelli v. Nissan N. Am., Inc.*, No. 14-CV-4327,

2015 WL 5686507, at *9 (E.D.N.Y. Sept. 25, 2015); *see also Cosgrove*, 520 F. Supp. 3d at 586

("At its core . . . the MMWA merely incorporates and federalizes state-law breach of warranty

claims, including state-law standards for liability and damages." (quotation marks omitted)).

Because the Court has already found Plaintiffs' claims for breach of express and implied

warranty to be subject to dismissal, Plaintiffs' claim under the MMWA is similarly dismissed.

*See Chiarelli*, 2015 WL 5686507, at *9 (dismissing claims under the MMWA where the plaintiffs had failed to state claims for breach of express or implied warranty); *Garcia*, 127 F. Supp. 3d at 232 (dismissing certain claims under the MMWA where the plaintiffs had failed to state claims for breach of express or implied warranty).[5]

### 4.  Negligent Misrepresentation Claim

"To state a claim for negligent misrepresentation under New York law, a plaintiff must allege that: '(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'"  *Brown*, 2021 WL 5446007, at *7 (quoting *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012)); *see also Sarr*, 2020 WL 729883, at *6 ("Under New York law, 'a claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" (alterations omitted) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011))).  "Under the 'duty' element, New York strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close to approach that of privity.'"  *Brown*, 2021 WL 5446007, at *7 (quoting *Anschultz*, 690 F.3d at 114).  "In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer

---

[5] Plaintiffs, in fact, appear to implicitly recognize that their MMWA claim is subject to dismissal.  (*See* Pls.' Mem. 17 ("To the extent New York warranty claims are viable, Plaintiffs' MMWA claims should not be dismissed.").)

and seller is required to establish the existence of a special relationship capable of giving rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech." *Id.* (alterations omitted) (quoting *Izquierdo*, 2016 WL 6459832, at *8); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *25 (E.D.N.Y. Sept. 22, 2015) (explaining that "courts have consistently held that advertisements alone are not sufficient" to allege the existence of a special relationship (collecting cases)). The New York Court of Appeals in *Kimmell v. Schaefer*, 675 N.E.2d 450 (N.Y. 1996), set forth a number of factors to determine whether a special relationship exists: (1) "whether the person making the representation held or appeared to hold unique or special expertise," (2) "whether a special relationship of trust of confidence existed between the parties," and (3) "whether the speaker was aware of the use to which the information would be and supplied it for that purpose," *id.* at 454; *see also Brown*, 2021 WL 5446007, at *7 (same).

Defendant argues that Plaintiffs have failed to plead the existence of a "special relationship" sufficient to state a claim for negligent misrepresentation because Plaintiffs do not claim to have any relationship with Defendant whatsoever, having purchased the Products from third-party retailers. (*See* Def.'s Mem. 13–14.) Defendant also argues that even assuming arguendo Plaintiffs did purchase the Products from Defendant, Plaintiffs have failed to allege that Defendant had any "unique or special expertise" or a "relationship of trust or confidence" with Plaintiffs. (*See id.* at 13–15.) Plaintiffs do not address Defendant's argument concerning their lack of relationship with Defendant whatsoever, instead simply arguing that they have alleged a special relationship with Defendant by alleging that Defendant "held themselves out [sic] as having special knowledge and experience in the area" and "is a global leader in the production of coolers." (Pls.' Mem. 18.)

Courts have resoundingly held that "[t]he requisite special relationship may not . . . be based solely on [a] [d]efendant['s] status as the manufacturer of the [product] because, if this alone were sufficient, a special relationship would necessarily always exist for purposes of misbranded food claims, which is not the case."  *Stoltz*, 2015 WL 5579872, at *25; *see also Sarr*, 2020 WL 729883, at *6 (explaining that the defendant's "status as a trusted brand . . . does not give rise to a duty to impart correct information, as the plaintiffs comprise 'a faceless or unresolved class' of consumers" (alterations omitted) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005) (per curiam))); *Izquierdo*, 2016 WL 6459832, at *9 ("Nothing in the complaint suggests that the transaction differs in any way from the numerous cases in this District and Circuit in which courts have held that a basic commercial transaction does not give rise to a special relationship.  Indeed, the relationship between [the defendant] and [the] [p]laintiffs appears to be more attenuated than a run-of-the-mill, arms-length commercial transaction because [the] [p]laintiffs did not buy the [c]andy from [the defendant]—they bought it from a movie theater concession stand.").  Plaintiffs here have raised no allegations suggesting any unique or special circumstances to depart from this general rule.

Neither of the cases on which Plaintiffs rely in their Opposition rescues their negligent misrepresentation claim from dismissal.  In both *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38 (E.D.N.Y. 2017), and *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439 (E.D.N.Y. 2013), the plaintiffs pled specific facts to allege that the defendants had held themselves out as having special and unique scientific expertise sufficient to plead the existence of a special relationship. In *Greene*, the plaintiffs alleged that the defendant "was aware of at least one major study that conclusively refuted [the] [d]efendant's health claim" made on the product's label, "and that [the] [d]efendant in fact sponsored that study and provided it with staff and funding."  262

F. Supp. 3d at 76 (quotation marks omitted).  And in *Hughes*, the plaintiffs alleged that the defendant had included marketing on its website which touted extensive "clinical research" supporting the use of the product.  930 F. Supp. 2d at 475 (italics omitted).  Here, all Plaintiffs have alleged is that the Defendant is a "global leader" in the industry and "hold[s] itself out as having special knowledge and experience [in] this area," (FAC ¶¶ 40, 72)—textbook "naked assertions devoid of further factual enhancement" that will not suffice to adequately state a claim for relief, *Ashcroft*, 556 U.S. at 678 (alterations and quotation marks omitted); *see also Tyman v. Pfizer, Inc.*, No. 16-CV-6941, 2017 WL 6988936, at *16 & n.16 (S.D.N.Y. Dec. 27, 2017) (explaining that "*Hughes* falls into a small minority of decisions that infer a special relationship between the parties to a commercial transaction without any allegation of direct contact between them" (quotation marks omitted)).

Accordingly, Plaintiffs' claim for negligent misrepresentation is dismissed.

### 5.  Fraud Claim

"Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Wynn*, 2021 WL 168541, at *7 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)).  And, as explained above, to adequately plead fraud, plaintiffs must also meet the particularity requirement in Federal Rule of Civil Procedure 9(b), which "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 403 (2d Cir. 2015).  *See also supra* II.A.2.

Defendant argues that Plaintiffs' fraud claim fails because Plaintiffs have failed to adequately plead scienter. (*See* Def.'s Mem. 15–16.) Defendant explains that neither alleging that Defendant knew that the Products' labels contained inaccurate statements nor alleging that Defendant had a general profit motive is sufficient to plead scienter. (*See id.*) Plaintiffs do not seem to deny that these allegations are their only allegations that go to scienter, but argue that their allegations as to Defendant's knowledge that the Products' labels contained inaccurate statements are sufficient to plead scienter under *Hughes*. (*See* Pls.' Mem. 19–20.)

First, the Court notes that *Hughes* is only persuasive authority from the Eastern District of New York, and as such, its holding is not binding on this Court. Nor does the Court read *Hughes* to stand for a broad rule that a plaintiff may plead scienter by simply alleging in a conclusory fashion that a manufacturer-defendant knew that a statement on its product's label was not accurate, which is all that Plaintiffs have alleged here. (*See* FAC ¶ 77 ("Defendant's fraudulent intent is evinced by its knowledge that the Products' abilities were not consistent with its representations.").) Indeed, courts in this District routinely dismiss fraud claims based on allegations which closely mirror the allegations in the FAC. *See, e.g.*, *Dashnau*, 529 F. Supp. 3d at 250 (finding allegation that "[the] [d]efendant's fraudulent intent is evinced by its failure to accurately identify the [p]roduct on its front labels, when it knew its statements were neither true nor accurate and could mislead consumers" to be "a general, conclusory claim [which] is insufficient to adequately state a claim for fraud" (quotation marks omitted)); *Colpitts*, 527 F. Supp. 3d at 585 (finding allegation that "[t]he defendant's fraudulent intent is evinced by its failure to accurately identify the [p]roduct on the front label, when it knew its statements were not true or accurate" to be "conclusory" and "fall short of the Rule 9(b) standard" (quotation marks omitted) (collecting cases)); *Barreto*, 518 F. Supp. 3d at 808 (holding that the plaintiff

29

failed to plead scienter where she had alleged that "[the] [d]efendant's fraudulent intent [was] evinced by its failure to accurately identify the [p]roducts on the front label when it knew this was not true [sic]" (quotation marks omitted)). Moreover, it is well-settled that pointing to a company's general profit motive is insufficient to plead scienter. *See Duran*, 450 F. Supp. 3d at 354 ("[S]imply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent."); *Sarr*, 2020 WL 729883, at *9 ("[A] generalized motive to satisfy consumers' desires and increase sales and profits does not support a strong inference of fraudulent intent." (alterations and quotation marks omitted)).

Accordingly, Plaintiffs' fraud claim is dismissed.

### 6.  Unjust Enrichment Claim

"The basic elements of an unjust enrichment claim in New York require proof that (1) [the] defendant was enriched, (2) at [the] plaintiff's expense, and (3) equity and good conscience militate against permitting [the] defendant to retain what [the] plaintiff is seeking to recover." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Unjust enrichment "lies as a quasi-contract claim" that "contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (quotation marks omitted). New York's highest court has made clear, however, that "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Rather, the claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* In other words, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.*

The Second Circuit has stated that "[t]wo claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages.'"  *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (alteration omitted) (quoting *Sitar v. Sitar*, 50 854 N.Y.S.2d 536, 538 (App. Div. 2008)).  Here, the unjust enrichment claim is premised on the same factual allegations as those supporting Plaintiffs' other claims, and Plaintiffs have not alleged distinct damages with respect to this claim.  Accordingly, the Court must dismiss Plaintiffs' unjust enrichment claim as duplicative.  *See, e.g.*, *Grossman*, 516 F. Supp. 3d at 284–85 (dismissing unjust enrichment claim that "duplicate[d] the plaintiff's other claims, which ar[o]se outside [of] identical facts," namely "the defendant's alleged misrepresentation on the product packaging"); *Wedra v. Cree, Inc.*, No. 19-CV-3162, 2020 WL 1322887, at *11 (S.D.N.Y. Mar. 20, 2020) (dismissing unjust enrichment claim that was "duplicative of [the] plaintiff's other claims for material misrepresentations rooted in statutory, contract, and tort law"); *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 567–68 (S.D.N.Y. 2016) (dismissing unjust enrichment claim that "rel[ied] on the same set of facts" underlying the plaintiff's claims for deceptive labeling and breach of express warranty); *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016) (dismissing unjust enrichment claim that "overlap[ped] with [the plaintiff's] fraud, fraudulent concealment, express warranty, and [GBL] § 349 claims").

While Plaintiffs' observation that "under Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency" is correct, (Pls.' Mem. 20 (alteration omitted) (quoting *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994))), it does nothing to change the Court's conclusion, particularly because the case on which Plaintiffs principally rely, *Henry*, concerned

31

claims of race and gender discrimination, not products liability or unjust enrichment.  Moreover,

*Burton v. Iyogi, Inc.*, No. 13-CV-6926, 2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015)—the other

case on which Plaintiffs rely, (*see* Pls.' Mem. 20)—is inapposite.  There, the defendant had

argued that the plaintiff's unjust enrichment claim was precluded by the existence of a valid and

enforceable contract covering the subject matter of the plaintiff's claim, and the court declined to

dismiss the plaintiff's unjust enrichment claim because the plaintiff had alleged fraud in the

inducement and disputed the validity of the contract.  2015 WL 4385665, at *11.  As such,

*Burton* presented wholly different factual circumstances and legal claims, and has no effect on

the Court's conclusion here.

Accordingly, Plaintiffs' claim for unjust enrichment is dismissed.

### III.  Conclusion

For the reasons stated above, Defendant's Motion is granted.  The Clerk of Court is

respectfully directed to terminate the pending motion.  (*See* Dkt. No. 25.)

Because this is the first adjudication of Plaintiffs' claims on the merits, dismissal of Plaintiffs' claims is without prejudice. The one exception is Plaintiffs' claim for injunctive relief, which is dismissed with prejudice. To the extent Plaintiffs have a good faith basis for filing a second amended complaint, they must do so within 30 days of the date of this Opinion & Order. Failure to properly and timely amend will result in dismissal of these claims with prejudice.[6]

SO ORDERED.

Dated:   March 21, 2022
         White Plains, New York

KENNETH M. KARAS
United States District Judge

---

[6] The Court takes a moment to reiterate its warning to Plaintiffs' counsel made in its recent decision in *Gordon v. Target Corporation*, No. 20-CV-9589, Dkt. No. 23, at 44 n.11 (S.D.N.Y. Mar. 18, 2022). Plaintiffs here may only file a second amended complaint where they have a *good faith basis* to do so.